UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:

HUGO E CASTELLANOS AKA HUGO
CASTELLANOS AKA HUGO EWIN
CASTELLANOS AKA HUGO EWIN
CASTELLANOS, JR. AKA HUGO
CASTELLANOS, JR. AKA HUGO E
CASTELLANOS, JR.

                                                CASE NO. 15-21207-LMI
                                                CHAPTER 13

Debtor(s).
_____/

## MOTION FOR RELIEF FROM CO-DEBTOR STAY

       COMES NOW Movant, WELLS FARGO BANK, N.A., a secured creditor, by and through its undersigned counsel, and respectfully moves this court pursuant to 11 U.S.C. §1301(c )(2) of the Bankruptcy Code to grant relief from stay and as grounds in support thereof would show the following:

1.      That this is a Motion pursuant to Bankruptcy Rule 4001(a) for relief from the Co-Debtor Stay.

2.      On June 22, 2015, HUGO E CASTELLANOS a/k/a HUGO CASTELLANOS a/k/a HUGO EWIN CASTELLANOS a/k/a HUGO EWIN CASTELLANOS, JR. a/k/a HUGO CASTELLANOS, JR. a/k/a HUGO E CASTELLANOS, JR., ("Debtor") filed a petition for relief under the Bankruptcy Code.

3.      Debtor(s) HUGO E CASTELLANOS, JR and Co-Debtor(s) YAZMIN CASTELLANOS AND HUGO E. CASTELLANOS, SR., executed a promissory note secured by a mortgage or deed of trust.  The promissory note is either made payable to Creditor or has been duly indorsed.  Creditor, directly or through an agent, has possession of the promissory note. Creditor is the original mortgagee or beneficiary or the assignee of the mortgage of deed of trust.

4.      Movant is the holder by Endorsed Note and Assignment recorded in O.R. Book 28026, and O.R. Page 1727 of a secured claim against Debtor for the total pre-petition amount of $320,097.91, and for the total post-petition amount of $25,661.45, pursuant to a Promissory Note and Mortgage from HUGO E. CASTELLANOS, JR AND YAZMIN CASTELLANOS

888122126

AND HUGO E. CASTELLANOS, SR. to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. dated February 26, 2009, recorded in Miami-Dade County, Florida, on March 6, 2009, with O.R. Book 26777 and O.R. Page 4284,  which constitutes a lien upon real property described as follows:

> **LOT 6, IN BLOCK 57, OF NINTH ADDITION TO SOUTHERN ESTATES,**
> **ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 80, AT PAGE 81, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY FLORIDA.**
>
> **a/k/a 3225 S.W. 124TH CT., MIAMI, FL 33175-2638**

as evidenced by the Promissory Note, Mortgage and Assignment of Mortgage (the "Loan Documents") attached hereto as Exhibit "A". Debtor(s) executed a promissory note secured by a mortgage or deed of trust. The promissory note is either made payable to Creditor or has been duly indorsed. Creditor, directly or through an agent, has possession of the promissory note. Creditor is the original Mortgagee or beneficiary or the assignee of the mortgage or deed of trust.

5.      The Loan Documents are in default in that the Debtor failed to make the post-petition mortgage payment due under the Loan Documents on March 1, 2016, and thereafter.

6.      In addition, late charges and other costs and expenses are now due and owing, as set forth on the Affidavit of Indebtedness in support of this motion, attached hereto.

7.      Moreover, the Debtor is no longer paying Lender through the operative Chapter 13 plan.

8.      Pursuant to 11 U.S.C. §1301(c)(2), Creditor may seek from the non-debtor co-obligor the remaining balance not proposed to be paid through the Debtor's Chapter 13 Plan; therefore, Creditor requests that the Co-Debtor stay be lifted so that it may take appropriate action against the non-filing co-debtor.

9.      Debtor has no equity in the real property, as evidenced by the report from the BPO completed by Robert Barsimantov, which report is attached hereto as Exhibit B.

10.      Movant requests that if Debtor converts this case to another chapter then the relief granted herein will survive any such conversion; and if converted Debtor will not be allowed to include Movant in a plan of reorganization.

11.      Creditor believes that the 14 day stay period set forth in Bankruptcy Rule 4001(a)(3) is not applicable in this case, and requests the Court to waive the 14 day stay so that Creditor may immediately enforce and implement any Order granting the relief requested herein.

888122126

WHEREFORE Movant prays this Court

A.      Enter its order in rem, granting relief from automatic stay to allow Creditor to pursue remedies via foreclosure, or in the alternative; that

B.      That the automatic stay be modified to permit Movant to contact the Debtor by telephone or written correspondence and, at its option, offer, provide and enter into any potential forbearance agreement, loan modification, refinance agreement or other loan workout/loss mitigation agreement; and

C.      The fourteen (14) day stay of the Order Granting Relief From Stay pursuant to Bankruptcy Rule 4001 (a)(3) is waived so that Movant  can pursue its in rem relief without delay; and

D.      For such other and further relief as the Court may deem just and proper.

eXL Legal, PLLC
Email Address: bk@exllegal.com
12425 28th Street North, Suite 200
St. Petersburg, FL 33716
Telephone No. (727) 536-4911
Attorney for the Movant
By:  /S/ Kenneth W. Lockwood

**Kenneth W. Lockwood**
FBN #16722

888122126

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and am in compliance with the additional qualifications to practice in this Court as set forth in Local Rule 2910(d) and (2).

I FURTHER CERTIFY that a true and correct copy of the foregoing was furnished on April 13, 2017, by U.S. Mail and/or electronic mail via CM/ECF to:

ROBERT SANCHEZ, ESQ                        NANCY NEIDICH, TRUSTEE
355 W 49 ST.                               P.O. BOX 279806
HIALEAH, FL 33012                          MIRAMAR, FL 33027

OFFICE OF THE US TRUSTEE
51 S.W. 1ST AVE
SUITE 1204
MIAMI, FL 33130

The parties identified below were served on April 13, 2017 by U.S. Mail.

HUGO E. CASTELLANOS                         HUGO CASTELLANOS, SR.
1024 SW 124TH AVENUE                        1024 SW 124TH AVENUE
MIAMI, FL 33184                             MIAMI, FL 33184

YAZMIN CASTELLANOS
3225 S.W. 124TH CT.
MIAMI, FL 33175-2638

eXL Legal, PLLC
Email Address: bk@exllegal.com
12425 28th Street North, Suite 200
St. Petersburg, FL 33716
Telephone No. (727) 536-4911
Attorney for the Movant
By: /S/ Kenneth W. Lockwood

**Kenneth W. Lockwood**
FBN #16722

888122126

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:

HUGO E CASTELLANOS AKA HUGO
CASTELLANOS AKA HUGO EWIN
CASTELLANOS AKA HUGO EWIN
CASTELLANOS, JR. AKA HUGO
CASTELLANOS, JR. AKA HUGO E
CASTELLANOS, JR.

CASE NO. 15-21207-LMI
CHAPTER 13

Debtor(s).

_____/

## AFFIDAVIT IN SUPPORT OF
## MOTION FOR RELIEF FROM AUTOMATIC STAY

Tiffany Pompey being duly sworn, deposes and says:

1.     I am a/an Vice President Loan Documentation of Wells Fargo Bank, N.A. and am

authorized to sign this affidavit on behalf of Wells Fargo Bank, N.A. This affidavit is provided in

support of the Motion for Relief from Stay (the "Motion") filed contemporaneously herewith.

2.     As part of my job responsibilities for Wells Fargo, I have personal knowledge of and am

familiar with the types of records maintained by Wells Fargo in connection with the account that is the

subject of the Motion (the "Account") and the procedures for creating those types of records. I have

access to and have reviewed the books, records and files of Wells Fargo that pertain to the Account and

extensions of credit given to Debtor(s) concerning the property securing such Account.

3.     The information in this affidavit is taken from Wells Fargo's business records regarding

the Account. The records are: (a) made at or near the time of the occurrence of the matters recorded by

persons with personal knowledge of the information in the business record, or from information

transmitted by persons with personal knowledge; and (b) kept in the course of Wells Fargo's regularly

888122126
401-FL-V9

conducted business activities. It is the regular practice of Wells Fargo to create and maintain such records.

4.      The Debtor(s), HUGO E. CASTELLANOS, JR. and YAZMIN CASTELLANOS and HUGO E. CASTELLANOS, SR., have executed and delivered or are otherwise obligated with respect to the attached promissory note referenced in the Motion (the "Debt Agreement"). Pursuant to the attached mortgage referenced in the Motion (the "Mortgage"), all obligations of the Debtor(s) under and with respect to the Debt Agreement and the Mortgage are secured by the property referenced in the Motion. The terms of the Debt Agreement were amended by the attached loan modification agreement entered into by and between WELLS FARGO BANK, N.A. and the Debtor(s) HUGO E. CASTELLANOS, JR. and YAZMIN CASTELLANOS and HUGO E. CASTELLANOS, SR dated April 21, 2011 (the "Loan Modification Agreement").

5.      Attached hereto as Exhibits A are true and correct copies of the Debt Agreement and the Security Instrument associated with the subject account. A true and correct copy of the related Loan Modification Agreement is attached hereto as Exhibit A.

6.      The subject account is in default April 3, 2017. There is now unpaid on said account the following, together with the costs expended by the Movant, and on the Movant's behalf:

| | | |
|---|---|---|
| Unpaid Principal Balance | | $243,377.38 |
| Interest Due | as of April 3, 2017 | $59,420.72 |
| Deficient Balance in Escrow | | $42,411.41 |
| Late Charges | | $465.08 |
| Property Inspections | | $0.00 |
| Bankruptcy Fees and Costs | | $0.00 |
| Foreclosure Fees and Costs | | $3,687.00 |
| Appraisals/BPOS | | 0.00 |
| Suspense | | $-3,735.92 |
| Other: MIP/PMI | | $91.93 |
| | | |
| TOTAL DUE | | $345,717.60 |

888122126
401-FL-V9

| Per diem to be added to indebtedness | $32.51 per day |
|---|---|

7.      As of April 3, 2017, there are one or more defaults in paying post-petition amounts due with respect to the Debt Agreement.

8.      The following chart sets forth those post-petition payments, due pursuant to the terms of the Debt Agreement, that have been missed by the Debtor(s) as of April 3, 2017

| Number of Missed Payments | From | To | Missed Principal and Interest | Missed Escrow (if applicable) | Monthly Payment Amount | Total Amounts Missed |
|---|---|---|---|---|---|---|
| 12 | 03/01/2016 | 02/01/2017 | $1,304.31 | $663.09 | $1,967.40 | $23,608.80 |
| 2 | 03/01/2017 | 04/01/2017 | $1,304.31 | $641.85 | $1,946.16 | $3,892.32 |

Less Post-petition partial payments (Suspense Balance):          ($1,839.67)

Total:  $25,661.45

9.      As of April 3, 2017, the total post-petition arrearage/delinquency and amount necessary to cure the post-petition default alleged in the Motion is $25,661.45, consisting of (i) the foregoing total of missed post-petition payments in the amount of $25,661.45, plus (ii) the following post-petition fees:[1]

| Description | Amount |
|---|---|
| N/A | N/A |

10.      Attached hereto as Exhibit B is a true and correct copy of a Broker's Price Opinion ("BPO") regarding the value of the subject that was prepared by Robert Barsimantov of Xcellence Realty, along with his/her qualifications. The attached BPO values the property as of **October 7, 2016, in an amount of $305,000.00.**

11.      The following documents are attached as exhibits and incorporated herein by reference:

(a)      Attached hereto as Exhibit C is a true and correct copy of the Debtor(s) (full/Post-petition) payment history.

---

[1] The total of missed post-petition payments for this impounded loan include any missed escrow payments. Such missed escrow payments include amounts assessed for taxes and insurance and any previously assessed escrow shortage amount (if applicable). To avoid duplication, post-petition advances (if any) made for insurance, real estate taxes, or similar charges are not listed separately to the extent such advances would have been paid from the missed escrow payments. As part of the next annual RESPA analysis, Wells Fargo will determine whether the escrow payments assessed to the debtor (including the missed escrow payments) result in a projected escrow shortage or overage. All rights are hereby reserved to assert or request any escrow amounts in accordance with RESPA and the total post-petition arrearage/delinquency is qualified accordingly.

(b)    Attached hereto as Exhibit D is an addendum listing all fees and charges assessed to the account of the Debtor(s) post –petition.

I solemnly affirm under the penalty of perjury and upon personal knowledge that the contents of the foregoing paper are true.

EXECUTED on April 4, 2017

_____

Tiffany Pompey
Vice President Loan Documentation
Wells Fargo Bank, N.A.

State of <u>SOUTH CAROLINA</u>    )
County of <u>YORK</u>    )

Sworn/affirmed to and subscribed before me on this <u>4th</u> day of <u>April</u>, 20<u>17</u>.  Personally known [ ] or produced identification [X].

Type of identification produced <u>Driver's License</u>.

_____
(Signature of Notary Public)
My commission expires : 01/18/2027
Notary seal

> MARY HELEN WILSON
> Notary Public, State of South Carolina
> My Commission Expires Jan. 18, 2027

888122126
401-FL-V9

Debtor name: HUGO E CASTELLANOS II    Bk Filing Date: 6/22/2015    First PP PmtDueDate/Amt: 7/1/2015 / $1921.81

| Post Petition Due Date | Classified Payment Amount Due | Date Funds Received | Transaction Amount Received | Date Funds Applied | Classified Total Amount Applied | Debtor Suspense Balance |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  | $0.00 |
| 7/1/2015 | $1,921.81 | 11/19/2015 | $5,025.87 | 11/19/2015 | $1,904.01 | $1,182.25 |
| 8/1/2015 | $1,921.81 |  |  | 11/19/2015 | $1,939.61 | $1,182.25 |
| 9/1/2015 | $1,921.81 | 12/29/2015 | $1,245.90 | 12/31/2015 | $1,921.81 | $2,428.15 |
|  |  |  |  |  |  | $506.34 |
|  |  | 1/15/2016 | $1,245.90 |  |  | $1,752.24 |
| 10/1/2015 | $1,921.81 | 2/22/2016 | $1,245.90 | 2/24/2016 | $1,921.81 | $2,998.14 |
|  |  |  |  |  |  | $1,076.33 |
| 11/1/2015 | $1,921.81 | 3/21/2016 | $1,245.90 | 3/23/2016 | $1,921.81 | $2,322.23 |
|  |  |  |  |  |  | $400.42 |
|  |  | 4/18/2016 | $1,245.90 |  |  | $1,646.32 |
| 12/1/2015 | $1,921.81 | 5/23/2016 | $1,245.90 | 5/23/2016 | $1,921.81 | $970.41 |
| 1/1/2016 | $1,921.81 | 6/21/2016 | $1,245.90 | 6/21/2016 | $1,921.81 | $294.50 |
|  |  | 7/20/2016 | $1,171.76 |  |  | $1,466.26 |
| 2/1/2016 | $1,921.81 | 8/18/2016 | $1,147.61 | 8/18/2016 | $1,921.81 | $692.06 |
|  |  | 9/23/2016 | $1,147.61 |  |  | $1,839.67 |
| 3/1/2016 | $1,967.40 |  |  |  |  |  |
| 4/1/2016 | $1,967.40 |  |  |  |  |  |
| 5/1/2016 | $1,967.40 |  |  |  |  |  |
| 6/1/2016 | $1,967.40 |  |  |  |  |  |
| 7/1/2016 | $1,967.40 |  |  |  |  |  |
| 8/1/2016 | $1,967.40 |  |  |  |  |  |
| 9/1/2016 | $1,967.40 |  |  |  |  |  |
| 10/1/2016 | $1,967.40 |  |  |  |  |  |
| 11/1/2016 | $1,967.40 |  |  |  |  |  |
| 12/1/2016 | $1,967.40 |  |  |  |  |  |
| 1/1/2017 | $1,967.40 |  |  |  |  |  |
| 2/1/2017 | $1,967.40 |  |  |  |  |  |
| 3/1/2017 | $1,946.16 |  |  |  |  |  |
| 4/1/2017 | $1,946.16 |  |  |  |  |  |
| Totals | $42,875.60 |  | $17,214.15 |  | $15,374.48 | $1,839.67 |

EXHIBIT C

Post-Petition Payment History

Case Number:  1521207

# Exhibit D

### Post-petition Fee Breakdown Addendum

| DESCRIPTION OF FEE OR CHARGES | DATE INCURRED | AMOUNT |
|---|---|---|
| N/A | N/A | $0.00 |
| TOTAL FEES AND CHARGES DUE | | $0.00 |

888122126

INDEBTEDNESS WORKSHEET

HUGO E CASTELLANOS AKA HUGO CASTELLANOS AKA HUGO EWIN CASTELLANOS
AKA HUGO EWIN CASTELLANOS, JR. AKA HUGO CASTELLANOS, JR. AKA HUGO E
CASTELLANOS, JR.

DEBT AS OF THE PETITION DATE 06/22/2015

A.      Total pre-petition indebtedness of debtor(s) to movant (if movant is not the lender, this refers to the indebtedness owed to the lender) as of petition filing date: $320,097.91

1.      Amount of principal: $245,551.04

2.      Amount of interest: $38,628.42, as of 06/22/2015

3.      Amount of escrow (taxes and insurance): $31,670.21

4.      Amount of forced placed insurance expended by movant: $96.16

5.      Amount of Attorneys' fees billed to debtor(s) pre-petition: $937.50

6.      Amount of pre-petition late fees, if any, billed to debtor(s): $465.08

7.      Any additional pre-petition fees, charges or amounts charges to debtors/debtors account and not listed above: **$2,749.50 (if additional space is needed list the amounts on a separate sheet and attach the sheet as an exhibit to this form: please list the exhibit number here: _____.)

B.      Contractual interest rate: 4.875%_____ (if interest rate is (or was) adjustable, list the rate(s) and date(s) was/were in effect on a separate sheet and attach the sheet as exhibit to this form: list the exhibit number here: _____)

** Additional Amounts:

Clerk Costs/Filing Fees $2,540.50, Title Costs $175.00, Recording Costs $14.00, Property Inspection Fees $20.00

404-FL Southern-V1

## AMOUNT OF ALLEGED POST-PETITION DEFAULT
### (AS OF 04/03/2017)

C.    Date last payment was received: <u>August 23, 2016</u>

D.    Alleged total number of payments due post-petition from filing of petition through payment due on MFR filing date: <u>14</u>

E.    All post-petition payments alleged to be in default:

| Alleged Amount Due Date | Alleged Amount Due | Amount Received | Amount Applied to Principal | Amount Applied to Interest | Amount Applied to Escrow | Late Fee Charged (if any) |
|---|---|---|---|---|---|---|
| 03/01/2016 | $1,967.40 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 04/1/2016 | $1,967.40 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 05/01/2016 | $1,967.40 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 06/01/2016 | $1,967.40 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 07/01/2016 | $1,967.40 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 08/01/2016 | $1,967.40 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 09/01/2016 | $1,967.40 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 10/01/2016 | $1,967.40 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 11/01/2016 | $1,967.40 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 12/01/2016 | $1,967.40 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 01/01/2017 | $1,967.40 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 02/01/2017 | $1,967.40 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 03/01/2017 | $1,946.16 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 04/01/2017 | $1,946.16 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

404-FL Southern-V1

| Suspense | $1,839.67 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Totals$ | $25,661.45 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

F.    Amount movant's Attorney fees billed to debtor for the preparation, filing and prosecution of this motion: $0.00

G.    Amount of movant's filing fee for this motion: $0.00

H.    Other Attorneys' fees billed to debtor post-petition: $0.00

I.    Amount of movant's post-petition inspection fees: $0.00

J.    Amount of movant's post-petition appraisal broker's price option: $0.00

K.    Amount of forced placed insurance or insurance provided by the movant post-petition:    $0.00

L.    Sum held in suspense by movant in connection with this contract, if applicable: $1,839.67

M.    Amount if other post-petition advances or charges, for example taxes, insurance incurred by debtor, etc. (itemize each charge): $0.00

404-FL Southern-V1

# NOTE

MIN: ▮▮▮▮▮▮▮▮                    Loan Number: ▮▮▮▮▮▮▮

FHA Case No.
▮▮▮▮▮▮▮▮

FEBRUARY 26, 2009        FT. LAUDERDALE        FLORIDA
[Date]                    [City]                [State]

3225 SW 124 CT, MIAMI, FLORIDA 33175
[Property Address]

## 1. PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means NATIONWIDE MORTGAGE & ASSOCIATES, INC., A FLORIDA CORPORATION and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of TWO HUNDRED THIRTY-SEVEN THOUSAND SIX HUNDRED SIXTEEN AND 00/100 Dollars (U.S. $ 237,616.00 ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of FIVE AND 500/1000 percent ( 5.500 %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT
**(A) Time**
Borrower shall make a payment of principal and interest to Lender on the 1st day of each month beginning on APRIL 1, 2009 . Any principal and interest remaining on the 1st day of MARCH, 2039 , will be due on that date, which is called the "Maturity Date."

**(B) Place**
Payment shall be made at 2740 E. OAKLAND PARK BLVD. SUITE 320, FT. LAUDERDALE, FLAL 33306 , or at such other place as Lender may designate in writing by notice to Borrower.

**(C) Amount**
Each monthly payment of principal and interest will be in the amount of U.S. $ 1,349.16 . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

FLORIDA - FHA FIXED RATE NOTE
FLFHA.NTE 05/01/08                    Page 1 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

Exhibit A
Loan Documents

**(D) Allonge to this Note for Payment Adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.

(Check applicable box.)

☐ Growing Equity Allonge
☐ Graduated Payment Allonge
☐ Other [specify]:

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000 percent ( 4.000 %) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Note.

_____ (Seal)
YAZMIN CASTELLANOS          -Borrower

_____ (Seal)
HUGO E. CASTELLANOS JR.  -Borrower

_____ (Seal)
HUGO E. CASTELLANOS SR.  -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

**ALLONGE ATTACHED FOR THE
PURPOSE OF ENDORSING THE NOTE**

*[Sign Original Only]*

FLORIDA - FHA FIXED RATE NOTE
FLFHA.NTE 06/01/08                    Page 3 of 3

DocMagic eFcrms 800-649-1362
www.docmagic.com

**Allonge To Note**

| | |
|---|---|
| Description | 3225 SW 124 Ct<br>Miami, FL    33175 |
| Maker: | Yazmin Castellanos, Hugo E. Castellanos, Jr. |
| Co-Maker(s): | Hugo E. Castellanos Sr. |
| Note Amount: | $237,616.00 |
| Note Date: | 02/26/2009 |
| Payee: | Nationwide Mortgage & Associates, Inc. |
| Loan Number: | ███████ |

Pay To The Order Of:

AFFILIATED MORTGAGE COMPANY 

Without Recourse

Name: _____

**Tamara Williams, Vice President**
**Texas Capital Bank, N.A.**
**Attorney-In-Fact For:**
**Nationwide Mortgage & Associates, Inc.**

Without recourse, pay to the order of Wells Fargo Bank, N.A.

Affiliated Mortgage Company

Dan Hastings, President

WITHOUT RECOURSE
PAY TO THE ORDER OF
Wells Fargo Bank, N.A.

By William R. Martin
William R. Martin
Vice President

CFN 2009R0166496
OR Bk 26777 Pgs 4284 - 4293; (10pgs)
RECORDED 03/06/2009 10:54:24
MTG DOC TAX 831.95
INTANG TAX 475.23
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

This Instrument Prepared By:

After Recording Return To:
NATIONWIDE MORTGAGE & ASSOCIATES, INC.
2740 E. OAKLAND PARK BLVD. SUITE 320
FT. LAUDERDALE, FLAL 33306
Loan Number: 3000014085

[Space Above This Line For Recording Data]

# MORTGAGE

FHA CASE NO.

MIN:

THIS MORTGAGE ("Security Instrument") is given on. FEBRUARY 26, 2009
The mortgagor is  HUGO CASTELLANOS, Jr and YAZMIN CASTELLANOS,
his wife and HUGO CASTELLNOS, Sr, a married man.                      ("Borrower").
This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") as Mortgagee. MERS
is the nominee for Lender, as hereinafter defined, and Lender's successors and assigns. MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-
2026, tel. (888) 679-MERS.
NATIONWIDE MORTGAGE & ASSOCIATES, INC., A FLORIDA CORPORATION                    ("Lender")
is organized and existing under the laws of
and has an address of      2740 E. OAKLAND PARK BLVD. SUITE 320, FT.
LAUDERDALE, FLAL 33306
Borrower owes Lender the principal sum of  TWO HUNDRED THIRTY-SEVEN THOUSAND SIX
HUNDRED SIXTEEN AND 00/100                 Dollars (U.S. $  237,616.00          ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on      MARCH 1, 2039             .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and
all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced
under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants
and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant
and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and
assigns of MERS the following described property located in  MIAMI-DADE            County, Florida:
SOUTHERN ESTS 9TH ADDN PB 80-81 LOT 6 BLK 57
A.P.N.: 30-4913-011-1210

FHA FLORIDA MORTGAGE - MERS
FLMTGZ.FHA 11/01/08                    Page 1 of 9              DocMagic *℮Rorms* 800-649-1362
                                                               www.docmagic.com

which has the address of  3225 SW 124 CT
                                                        [Street]

        MIAMI                       , Florida    33175        ("Property Address"):
        [City]                                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or cancelling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:
    1.   **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.
    2.   **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance

remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a

FHA FLORIDA MORTGAGE - MERS
FLMTGZ.FHA  11/01/08                     Page 3 of 9                     DocMagic *eForms* 800-649-1362
                                                                         www.docmagic.com

leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6.  **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7.  **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8.  **Fees.** Lender may collect fees and charges authorized by the Secretary.

9.  **Grounds for Acceleration of Debt.**

(a)  **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b)  **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions' Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

---

FHA FLORIDA MORTGAGE - MERS
FLMTGZ.FHA  11/01/08

DocMagic *eForms* 800-649-1362
www.docmagic.com

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c)  No Waiver.  If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d)  Regulations of HUD Secretary.  In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid.  This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e)  Mortgage Not Insured.  Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 DAYS from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument.  A written statement of any authorized agent of the Secretary dated subsequent to 60 DAYS from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility.  Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10.  Reinstatement.  Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument.  This right applies even after foreclosure proceedings are instituted.  To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding.  Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full.  However, Lender is not required to permit reinstatement if:  (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11.  Borrower Not Released; Forbearance by Lender Not a Waiver.  Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest.  Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12.  Successors and Assigns Bound; Joint and Several Liability; Co-Signers.  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b).  Borrower's covenants and agreements shall be joint and several.  Any Borrower who co-signs this Security Instrument but does not execute the Note:  (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13.  Notices.  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice  shall be directed

FHA FLORIDA MORTGAGE - MERS
FLMTGZ.FHA  11/01/08

Page 5 of 9

DocMagic *Fantius* 800-649-1362
www.docmagic.com

to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses**

incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

20. **Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

21. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

☐ Condominium Rider      ☐ Graduated Payment Rider      ☐ Growing Equity Rider
☐ Planned Unit Development Rider      ☐ Adjustable Rate Rider      ☐ Rehabilitation Loan Rider
☐ Non-Owner Occupancy Rider      ☐ Other [Specify]

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

FHA FLORIDA MORTGAGE - MERS
FLMTGZ.FHA  11/01/08      Page 7 of 9      DocMagic *eForms* 800-649-1362
www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 9 of this Security
Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
YAZMIN CASTELLANOS            -Borrower
3225 SW 124 CT, MIAMI,
FLORIDA 33175

_____ (Seal)
HUGO E. CASTELLANOS JR.     -Borrower
3225 SW 124 CT, MIAMI, FLORIDA
33175

_____ (Seal)
HUGO E. CASTELLANOS SR.     -Borrower
3225 SW 124 CT, MIAMI,
FLORIDA 33175

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

_____ (Seal)
                             -Borrower

Witness:

_____
Katy Gandara

Witness:

_____
Marlen Rodriguez

FHA FLORIDA MORTGAGE - MERS
FLMTGZ.FHA  11/01/08

Page 8 of 9

DocMagic ⊞Forms 800-649-1362
www.docmagic.com

————————————————— [Space Below This Line For Acknowledgment] —————————————————

STATE OF FLORIDA

COUNTY OF __MIAMI-DADE__

The foregoing instrument was acknowledged before me this __26th__ day of __February, 2009__

by __YAZMIN CASTELLANOS AND HUGO E. CASTELLANOS JR. AND HUGO E.__

__CASTELLANOS SR.__

who is personally known to me or who has produced __FDL__

as identification.                                                                (Type of Identification)

```
                                        KETY GANDARA
                                   Notary Public - State of Florida
                                  My Commission Expires Jul 4, 2010
                                        Commission # DD 570866
                                    Bonded By National Notary Assn.
```

Signature

Kety Landry

Name of Notary

(Seal)

Title

Serial Number, if any

FHA FLORIDA MORTGAGE - MERS
FLMTGZ.FHA  11/01/08

Page 9 of 9

DocMagic *eforms* 800-649-1362
www.docmagic.com

OR BK 26777 PG 4293
LAST PAGE

# Exhibit "A"

Legal Description for File No.: 09-025

Lot 6, in Block 57, of NINTH ADDITION TO SOUTHERN ESTATES,
according to the Plat thereof, as Recorded in Plat Book 80, at Page 81, of the
Public Records of MIAMI-DADE County Florida.

CFN 2012R0168473
OR Bk 28026 Pgs 1727 - 1728; (2pgs)
RECORDED 03/08/2012 15:29:37
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Recording Requested By:
WELLS FARGO BANK, N.A.

When Recorded Return To:

DEFAULT ASSIGNMENT
WELLS FARGO BANK, N.A.
MAC: X9999-018
PO BOX 1629
MINNEAPOLIS, MN 55440-9790

<u>CORPORATE ASSIGNMENT OF MORTGAGE</u>

Miami-Dade, Florida
"CASTELLANOS"
SELLER'S LENDER ID#: 077/WH
INVESTOR'S LOAN
POOL
OLD SERVICING

MERS

Date of Assignment: January 12th, 2012
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR NATIONWIDE
MORTGAGE & ASSOCIATES, INC., A FLORIDA CORPORATION, ITS SUCCESSORS AND ASSIGNS at BOX 2026
FLINT MI 48501, 1901 E VOORHEES ST STE C., DANVILLE, IL 61834
Assignee: WELLS FARGO BANK, NATIONAL ASSOCIATION at 1 HOME CAMPUS, DES MOINES, IA 50328
Executed By: HUGO CASTELLANOS, JR AND YAZMIN CASTELLANOS, HIS WIFE AND HUGO CASTELLNOS,
SR, A MARRIED MAN To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR
NATIONWIDE MORTGAGE & ASSOCIATES, INC., A FLORIDA CORPORATION, ITS SUCCESSORS AND
ASSIGNS
Date of Mortgage: 02/28/2009 Recorded: 03/06/2009 In Book/Reel/Liber: 26777 Page/Folio: 4284 as Instrument
No.: 2009R0168496 In the County of Miami-Dade, State of Florida.

Property Address: 3225 SW 124 CT, MIAMI, FL 33175

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $237,616.00 with Interest, secured thereby, with all moneys now owing
or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the
covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee,
the Assignor's beneficial interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR NATIONWIDE MORTGAGE &
ASSOCIATES, INC., A FLORIDA CORPORATION, ITS SUCCESSORS AND ASSIGNS
On _____1-13-12_____

By: _____
Assistant Secretary

STATE OF Minnesota
COUNTY OF Dakota

On _1-13-12_, before me, _____Robert W. Caruso_____, a Notary Public in Dakota County in the
State of Minnesota, personally appeared _____, Assistant Secretary, personally
known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
Robert W. Caruso
Notary Expires: _1-Cov_

ROBERT W. CARUSO
NOTARY PUBLIC
MINNESOTA
My Commission Expires Jan. 31, 2014
(This area for notarial seal)

OR BK 28026 PG 1728
LAST PAGE

CORPORATE ASSIGNMENT OF MORTGAGE Page 2 of 2



Wells Fargo Home Mortgage
MAC X9999-01N
1000 Blue Gentian Road
Suite 300
Egan, MN 55121-1786

Tel: 800.416.1472

LOAN MODIFICATION AGREEMENT
LOAN NUMBER: ▇▇▇▇▇▇
PROPERTY ADDRESS 3225 Sw 124 Court
Miami FL 33175
MIN ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ MERS Phone: 1-888-679-6377

THIS LOAN MODIFICATION AGREEMENT ("Agreement"), made on
April 21, 2011, by and between Yazmin Castellanos and
Hugo E Castellanos Jr and Hugo E Castellanos Sr (the "Borrower(s)") and
Wells Fargo Bank, N A (the "Lender",
And Mortgage Electronic Registration Systems, Inc. (Mortgagee)
together with the Borrower(s), the "Parties").

WITNESSETH
WHEREAS, Borrower has requested and Lender has agreed, subject to the
following terms and conditions, to a loan modification as follows:
NOW THEREFORE, in consideration of the covenants hereinafter set forth
and for other good and valuable consideration, the receipt and
sufficiency of which are hereby acknowledged by the Parties, it is agreed
as follows (notwithstanding anything to the contrary in the Note and
Security Instrument dated 02/26/2009.)
1.   BALANCE. As of April 21, 2011, the amount payable under the Note
and Security Instrument (the "Unpaid Principal Balance") is U.S.
$ 232,465.11.
2.   EXTENSION. This Agreement hereby modifies the following terms of the
Note and Security Instrument described herein above as follows:
A. The current contractual due date has been extended from 11-01-10
to 07/01/2011. The first modified contractual due date is on
07/01/2011.
B. The maturity date has been extended from 03-39 (month/year) to
06/01/2041.
C. The amount of interest to be included (capitalized) will be U.S.
$ 8,523.76.
The amount of the Escrow Advance to be capitalized will be U.S. $5,277.85.
The amount of Recoverable Expenses* to be capitalized will be
U.S. $575.00.
The modified Unpaid Principal Balance is U.S. $ 246,463.89.
* Recoverable Expenses may include, but are not limited to: Title,
Attorney fees/costs, BPO/Appraisal, and/or Property Preservation/
Property Inspections

D. The Borrower(s) promises to pay the Unpaid Principal Balance plus
interest, to the order of the Lender. Interest will be charged on the
Unpaid Principal Balance of U.S. $ 246,463.89. The Borrower(s) promises
to make monthly payments of principal and interest of U.S. $ 1,304.31,
at a yearly rate of 4.875%, not including any escrow deposit, if
applicable. If on the maturity date the Borrower(s) still owes an amount
under the Note and Security Instrument, as amended by this Agreement,
Borrower(s) will pay this amount in full on the maturity date.

Together we'll go far





Wells Fargo Home Mortgage
MAC X9999-01N
1000 Blue Gentian Road
Suite 300
Egan, MN 55121-1788

Tel: 800 416 1472

3.   NOTE AND SECURITY INSTRUMENT. Nothing in this Agreement shall be understood or construed to be a satisfaction or release, in whole or in part of the Borrower's obligations under the Note or Security Instrument. Further, except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and shall comply with, all of the terms and provisions thereof, as amended by this Agreement.

4.   The undersigned Borrower(s) acknowledge receipt and acceptance of the Loan Modification Settlement Statement. Borrower(s) agree with the information disclosed in and understand that I/we am/are responsible for payment of any outstanding balances outlined in the Loan Modification Settlement.

5.   The undersigned Borrower(s) acknowledge receipt and acceptance of the Borrower Acknowledgements, Agreements, and Disclosures Document (BAAD).

6.   If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Truth in Lending statement.

7.   If included, the undersigned Borrower(s) acknowledge receipt and acceptance of the Special Flood Hazard Area (SFHA).

8.   That (he/she/they) (is/are) the Borrower(s) on the above-referenced Mortgage Loan serviced by Wells Fargo Bank, N A.

That (he/she/they) have experienced a financial hardship or change in financial circumstances since the origination of (his/her/their) Mortgage Loan.

That (he/she/they) did not intentionally or purposefully default on the Mortgage Loan in order to obtain a loan modification.



Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. NMLSR ID 399801



Wells Fargo Home Mortgage
MAC X9999-01N
1000 Blue Gentian Road
Suite 300
Egan, MN 55121-1786

Tel: 800 416 1472

CORRECTION AGREEMENT. The undersigned borrower(s), for and in consideration of the approval, closing and funding of this Modification, hereby grants Wells Fargo Bank, N A, as lender, limited power of attorney to correct and/or initial all typographical or clerical errors discovered in the Modification Agreement required to be signed. In the event this limited power of attorney is exercised, the undersigned will be notified and receive a copy of the document executed or initialed on their behalf. This provision may not be used to modify the interest rate, modify the term, modify the outstanding principal balance or modify the undersigned's monthly principal and interest payments as modified by this Agreement. Any of these specified changes must be executed directly by the undersigned. This limited power of attorney shall automatically terminate in 120 days from the closing date of the undersigned's Modification. _YMC_ _HEC_ (Borrower(s) initial)

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as the date first above written.

By signing this Agreement I hereby consent to being contacted concerning this loan at any cellular or mobile telephone number I may have. This includes text messages and telephone calls including the use of automated dialing systems to contact my cellular or mobile telephone. You will not be billed by your cellular or mobile carrier for any text messages you may receive from Wells Fargo, however, any calls we place to your cellular or mobile phone will incur normal airtime charges assessed by your mobile carrier.

Dated as of this _25_ day of _APRIL_ , 20_11_

_Yazmin M Castro_                          _Hugo Castellanos_
Yazmin Castellanos                         Hugo E Castellanos Jr
Signature                                  Signature

_Hugo Castellanos Sr_                       SWORN TO AND SUBSCRIBED BY
Hugo E Castellanos Sr                       HUGO E. CASTELLANOS, SR
Signature              KimMoua              HUGO E. CASTELLANOS, JR
_KimMoua 5/13/11 Vice President Loan Documentation_    YAZMIN CASTELLANOS.
Wells Fargo Bank, N A                        before me this 25th day of APRIL,
                                            2011 IN MIAMI-DADE COUNTY, FLORIDA.
                    _11-9-11_                _Roberto Lindsay_
Mortgage Electronic Registration Systems, Inc.    ROBERTO LINDSAY
                                                  NOTARY PUBLIC
Name: Norberto S. Aguillon
Its: Assistant Secretary

ROBERTO LINDSAY                    ROBERTO LINDSAY
MY COMMISSION # DD 867040          MY COMMISSION # DD 8
EXPIRES: April 28, 2013            EXPIRES: April 28, 2013
Bonded Thru Budget Notary Services    Together we'll go fur

Wells Fargo Home Mortgage is a division of Wells Fargo Bank, N.A. NMLSR ID 399801


## RESIDENTIAL VALUATION SERVICES (RVS) - EVALUATION

☐ Reject/Withdraw – Check Reason Below
☐ 2-4 Units  ☐ Commercial/Mixed Use  ☐ Zoned Commercial/Industrial  ☐ Acreage (5+)  ☐ Mobile/Mfg. Home  ☐ Vacant Land  ☐ Co-Op
☐ Other

### Subject Property

Property Address 3225 124TH CT    City MIAMI    State FL    Zip Code 33175
County MIAMI-DADE    APN/Tax ID # 30-4913-011-1210    Owner of Public Record YAZMIN CASTELLANOS
Borrower YAZMIN CASTELLANOS    Occupancy ☒ Owner ☐ Tenant ☐ Vacant ☐ Unknown
Client Wells Fargo Bank, N.A.    Address 1100 Corporate Center Dr 1st Floor RALEIGH NC 27607

Inspection Type ☐ Interior ☒ Exterior    Inspection Date 10/7/2016
Property Type ☒ SFR ☐ Condo ☐ PUD ☐ Other ___    HOA $ ___ per month
Projected Use Residential    Current Use Residential    Zoning Designation Residential
Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

### Subject Property Transfer and Listing History

Has the subject property transferred in the previous 12 months? ☐ Yes (if yes, Price $ ___ Date: ___ ) ☒ No
Is the subject currently listed? ☐ Yes (If yes, current list price $ ___ and DOM ___ ) ☒ No
If the subject is not currently listed, has it been listed in the previous 12 months? ☐ Yes (if yes, list price $ ___ and DOM ___ ) ☒ No
If the subject has been listed in the previous 12 months, has it been listed multiple times? ☐ Yes (☐ 2 ☐ 3 ☐ 4+) ☐ No ☒ N/A
Original List Price $ ___ Date ___ Last List Price $ N/A Date ___
Listing Broker ___ Listing Broker Company ___ Listing Broker Phone ___

Comments:

### Neighborhood

| Neighborhood Characteristics | One Unit Housing Trends | PRICE $(000) | AGE (yrs) |
|---|---|---|---|
| Location: ☐ Urban ☒ Suburban ☐ Rural | Property Values: ☒ Increasing ☐ Stable ☐ Declining | 190 Low 30 | |
| Built-Up: ☒ > 75% ☐ 25-75% ☐ < 25% | Demand/Supply: ☒ Shortage ☐ In Balance ☐ Over Supply | 375 High 65 | |
| Growth: ☐ Rapid ☒ Stable ☐ Slow | Marketing Time: ☒ Under 3 mths ☐ 3-6 mths ☐ Over 6 mths | 305 Pred. 57 | |

Marketing Time Trends for Competitive Properties: ☒ Increasing ☐ Stable ☐ Declining
Number of Competitive Listings in the Subject Property's neighborhood on the market 9    Price Range $ $249,900.00 to $ $375,000.00
Number of Comparable Sales in the Subject Property's neighborhood in the last 12 mths 45    Price Range $ $190,000.00 to $ $345,000.00

Neighborhood Description
Residential community consisting of single family homes of similar style and age.

Market Conditions
Market conditions are improving.

### Adverse Influences

Were there any physical, functional, or external influences observed that would affect the subject's marketability and/or value? ☐ Yes ☒ No
(If yes is checked, then identify the influence(s) and provide comments analyzing the effect on the subject's marketability and/or value in the Comments field below.)

☐ Busy street/hwy ☐ Nearby commercial or industrial land use ☐ Train tracks ☐ Power towers/lines ☐ Ingress/egress issues ☐ Environmental
☐ Market Activity ☐ Stigma ☐ Vacancies ☐ Mixed land use
☐ Physical deficiencies (health and safety, structural, etc.) ☐ Deferred maintenance ☐ Site Issues (Topography, drainage, etc.) ☐ Non-conforming
☐ Other

Comments:
None noted.

"BPO"
EXHIBIT B



Order #

## RESIDENTIAL VALUATION SERVICES (RVS) - EVALUATION

### SALES COMPARISON ANALYSIS

| Property features | Subject | Comparable #1 | Comparable #2 | Comparable #3 |
|---|---|---|---|---|
| Address | 3225 124TH CT | 5267 SW 111th Ave , Miami, FL | 2907 SW 126th Ave , Miami, FL | 12876 SW 53rd St , Miami, FL |
| Proximity | | 2mi. SE | 0.3mi. NW | 1.5mi. S |
| Sale Price | $ 305,000.00E | $ 290,000.00 | $ 300,500.00 | $ 310,000.00 |
| Sale or Financing Concessions | 0 | 0 | 0 | 0 |
| Sale Price/Gross Liv Area | $ 243 /sq. ft. | $ 230 /sq. ft. | $ 259 /sq. ft. | $ 229 /sq. ft. |
| Data Sources | MLS,Tax Records, | MLS,Tax Records, | MLS,Tax Records, | Tax Records, |
| MLS# / DOM | | A10065673        51 | A10042264        322 | A2167252        70 |
| List Price | $ | $ 295,000.00 | $ 280,000.00 | $ 325,000.00 |
| Contract Date/Close Date | N/A        N/A | 4/22/2016        6/3/2016 | 4/25/2016        7/1/2016 | 11/1/2015        12/16/2015 |
| Location | Suburban | ☐Superior ☒Similar ☐Inferior | ☐Superior ☒Similar ☐Inferior | ☐Superior ☒Similar ☐Inferior |
| Site Area | 9000 | 8000 | 11323 | 9375 |
| View | Canal | ☐Superior ☐Similar ☒Inferior | ☐Superior ☐Similar ☒Inferior | ☐Superior ☒Similar ☐Inferior |
| Year Built | 1967 | 1957 | 1968 | 1972 |
| Design (Style) | Ranch | Ranch | Ranch | Ranch |
| Condition | Average | ☐Superior ☒Similar ☐Inferior | ☐Superior ☒Similar ☐Inferior | ☐Superior ☒Similar ☐Inferior |
| Above Grade | Total  Bdrms  FB/HB | Total  Bdrms  FB/HB | Total  Bdrms  FB/HB | Total  Bdrms  FB/HB |
| Room Count | 5      2      1    0 | 5      2      2    0 | 5      3      2    0 | 5      3      1    0 |
| Gross Living Area (GLA) | 1253        sq. ft. | 1261        sq. ft. | 1160        sq. ft. | 1352        sq. ft. |
| Basement | None | ☐Yes ☒No | ☐Yes ☒No | ☐Yes ☒No |
| If Basement (Describe Subj.) | | ☐Superior ☒Similar ☐Inferior | ☐Superior ☒Similar ☐Inferior | ☐Superior ☒Similar ☐Inferior |
| Garage/Carport | | ☐Superior ☒Similar ☐Inferior | ☐Superior ☒Similar ☐Inferior | ☐Superior ☒Similar ☐Inferior |
| Pool | None | ☐Yes ☒No | ☒Yes ☐No | ☐Yes ☒No |
| HOA Dues (Condo only) | $ | $ 0 | $ 0 | $ 0 |
| REO / Short Sale / No | NO | ☐REO ☐Short Sale ☒No | ☐REO ☐Short Sale ☒No | ☐REO ☐Short Sale ☒No |
| Subdivision/Development | Southern Estates | ☐Superior ☒Similar ☐Inferior | ☐Superior ☒Similar ☐Inferior | ☐Superior ☒Similar ☐Inferior |
| Other Amenities | None | SIMILAR | SIMILAR | SIMILAR |
| Overall Comparison to the Subject Property | | ☐Superior ☒Similar ☐Inferior | ☐Superior ☒Similar ☐Inferior | ☐Superior ☒Similar ☐Inferior |

### Transfer History

The Preparer has researched and analyzed a 3 year transfer history of the subject property/ 1 year history for the comparables

| Transfer History | Subject | | Comp 1 | | Comp 2 | | Comp 3 | |
|---|---|---|---|---|---|---|---|---|
| Date/Amount | N/A | $ N/A | N/A | $ N/A | N/A | $ N/A | N/A | $ N/A |
| | N/A | $ N/A | N/A | $ N/A | N/A | $ N/A | N/A | $ N/A |

### Sales Comparison Analysis

**Comp #1:**

Comp has similar attributes, location and size. Has new kitchen.

**Comp #2:**

Comp is located in same subdivision as subject and is similar in gla. Has a pool.

**Comp #3:**

Comp has similar attributes, location and gla with canal view. Has been upgraded.

**Comp #4:**

Comp is similar in gla and is located in same subdivision as subject.

**Comp #5:**

Comp is located in same subdivision as subject and is similar in gla.  Has been remodeled.

**Comp #6:**

Comp has similar attributes, location and size. Has water view.

**Sales Comparison Analysis Conclusion:**

* OVERFLOW - SEE "ADDITIONAL FIELD TEXT ADDENDA" *

Estimate of Market Value $ 305,000.00        as of 10/7/2016        which is the date of inspection and the effective date of this evaluation.



File #
Order #

# RESIDENTIAL VALUATION SERVICES (RVS) - EVALUATION

## SALES COMPARISON ANALYSIS

| Property features | Subject | Comparable #4 | Comparable #5 | Comparable #6 |
|---|---|---|---|---|
| Address | 3225 124TH CT | 11760 SW 29th St , Miami, FL | 11843 SW 37th Terrace , Miami, FL | 10798 SW 43rd Ln , Miami, FL |
| Proximity | | 0.7mi. NE | 0.7mi. SE | 1.8mi. SE |
| Sale Price | $ 305,000.00E | $ N/A | $ N/A | $ N/A |
| Sale or Financing Concessions | 0 | 0 | 0 | 0 |
| Sale Price/Gross Liv Area | $ 243 /sq. ft. | $ 242 /sq. ft. | $ 264 /sq. ft. | $ 221 /sq. ft. |
| Data Sources | MLS,Tax Records, | MLS,Tax Records, | MLS,Tax Records, | MLS,Tax Records, |
| MLS# / DOM | | A10159709        1 | A10095759       124 | A10159597       90 |
| List Price | $ | $ 329,500.00L | $ 329,000.00L | $ 299,900.00L |
| Contract Date/Close Date | N/A        N/A | N/A        N/A | N/A        N/A | N/A        N/A |
| Location | Suburban | Superior X Similar Inferior | Superior X Similar Inferior | Superior X Similar Inferior |
| Site Area | 9000 | 10000 | 9515 | 12100 |
| View | Canal | Superior Similar X Inferior | Superior Similar X Inferior | Superior X Similar Inferior |
| Year Built | 1967 | 1968 | 1960 | 1956 |
| Design (Style) | Ranch | Ranch | Ranch | Ranch |
| Condition | Average | Superior X Similar Inferior | Superior X Similar Inferior | Superior X Similar Inferior |
| Above Grade | Total | Bdrms | FB/HB | Total | Bdrms | FB/HB | Total | Bdrms | FB/HB | Total | Bdrms | FB/HB |
| Room Count | 5 | 2 | 1   0 | 5 | 3 | 2   0 | 5 | 2 | 2   0 | 5 | 2 | 1   0 |
| Gross Living Area (GLA) | 1253 sq. ft. | 1364 sq. ft. | 1246 sq. ft. | 1360 sq. ft. |
| Basement If Basement (Describe Subj.) | None | Yes X No / Superior X Similar Inferior | Yes X No / Superior X Similar Inferior | Yes X No / Superior X Similar Inferior |
| Garage/Carport | None | Superior X Similar Inferior | Superior X Similar Inferior | Superior X Similar Inferior |
| Pool | None | Yes X No | Yes X No | Yes X No |
| HOA Dues (Condo only) | $ | $ 0 | $ 0 | $ 0 |
| REO / Short Sale / No | NO | REO Short Sale X No | REO Short Sale X No | X REO Short Sale No |
| Subdivision/Development | Southern Estates | Superior X Similar Inferior | Superior X Similar Inferior | Superior X Similar Inferior |
| Other Amenities | None | SIMILAR | SIMILAR | SIMILAR |
| Overall Comparison to the Subject Property | | Superior X Similar Inferior | Superior X Similar Inferior | Superior X Similar Inferior |

## Transfer History

The Preparer has researched and analyzed a 3 year transfer history of the subject property/ 1 year history for the comparables

| Transfer History | Subject | Comp 4 | Comp 5 | Comp 6 |
|---|---|---|---|---|
| Date/Amount | N/A        $ N/A | N/A        $ N/A | N/A        $ N/A | N/A        $ N/A |
| | N/A        $ N/A | N/A        $ N/A | N/A        $ N/A | N/A        $ N/A |

## Additional Comments

Comments:

The subject is noted to be in average exterior condition with no apparent deferred maintenance noted at the time of exterior inspection.

Most Likely Rent: $2,000.00 (per month)

120 Day Comparable Exception: Due to the limited inventory, to locate comp with similar water view and a two bedroom sold comp, contract date parameters needed to be exceeded.

## Preparer's Information and Estimate of Market Value

Market Value: $ $305,000.00

Prepared By:        Robert Barsimantov

Broker/ License #:  SL339973                    Effective Date:    10/7/2016

License State:      FL

Company:            Xcellence Realty

Company Address:    8530 sw 124 avenue # 103-115, Miami FL

Date of Signature:  10/7/2016                   Signature: Robert Barsimantov

Phone:              786-286-1643


# RESIDENTIAL VALUATION SERVICES (RVS) - EVALUATION

**PRODUCT DISCLAIMER**

This valuation is not an appraisal. Though market value is a component of this valuation, the information and value conclusion within was not from a person licensed or certified under applicable law to perform appraisals unless otherwise noted within the report.

**SCOPE OF WORK:**

The preparer must, at a minimum: (1) perform a visual inspection of the subject property as notated on page 1 of this evaluation, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this report.

**DEFINITION OF MARKET VALUE:**

The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.
*(As defined by Title XI, 12 CFR Part 34, Subpart C)*

**PREPARER'S CERTIFICATION:** The preparer certifies and agrees that:

1.    I performed a complete visual inspection of the subject property as notated on page 1 of this evaluation. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

2.    I have adequate comparable market data to develop a reliable value conclusion for this assignment.

3.    I researched, verified, analyzed, and reported on any current agreement of sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this evaluation, and the prior sales of the subject property in the twelve months prior to the effective date of this evaluation, unless otherwise indicated in this report.

4.    I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

5.    I have knowledge and experience in evaluating this type of property in this market area.

6.    I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

7.    I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this evaluation. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

8.    I stated in this evaluation report my own personal, unbiased, and professional analysis, opinions, and conclusions in this report.

9.    I personally prepared all conclusions and opinions about the real estate that were set forth in this evaluation report.

10.   I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest of bias with respect to the participants in the transaction.

ADDITIONAL FIELD TEXT

| Borrower/Client | YAZMIN CASTELLANOS | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 3225 124TH CT | | | | | |
| City MIAMI | | County MIAMI-DADE | | State FL | Zip Code 33175 | |
| Lender | Wells Fargo Bank, N.A. | | | | | |

COMMENT SALES COMPARE COMPS 1-3

The most comparable comp is #2: Nearest in proximity (same subdivision) and most recent sold comp.

The sale and listing search was conducted thru the MLS and the relevant comps provided are the most recent sales and listings in the closest proximity to the subject that supports the current market value. A range of pricing for the comparables provides an illustration of the subject's marketplace. The most applicable of these comps are represented by the core majority, which are attributed most weight in the reconciliation.  Due to the limited inventory, to locate comps with similar water view and a two bedroom sold comp,  the  search distance was expanded as needed to provide comps with similar attributes to the subject property.  Sold and contract date parameters also needed to be exceeded.  The only available list comp with water view, as subject, is an REO and it has been used as list comp 3.

## SUBJECT PHOTOGRAPH ADDENDUM

File #

| | |
|---|---|
| Borrower/Client | YAZMIN CASTELLANOS |
| Property Address | 3225 124TH CT |
| City | MIAMI |
| County | MIAMI-DADE    State FL    Zip Code 33175 |
| Lender | Wells Fargo Bank, N.A. |



**FRONT OF SUBJECT PROPERTY**

_____
_____
_____

**REAR OF SUBJECT PROPERTY**

_____
_____
_____



**STREET SCENE**

Street Scene _____
_____
_____

ADDITIONAL PHOTOGRAPH ADDENDUM

File #

| Borrower/Client | YAZMIN CASTELLANOS | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 3225 124TH CT | | | | | |
| City | MIAMI | County | MIAMI-DADE | State | FL | Zip Code 33175 |
| Lender | Wells Fargo Bank, N.A. | | | | | |



Side View



Address Verification

COMPARABLES PHOTOGRAPH ADDENDUM

File #

| | |
|---|---|
| Borrower/Client | YAZMIN CASTELLANOS |
| Property Address | 3225 124TH CT |
| City | MIAMI | County | MIAMI-DADE | State | FL | Zip Code | 33175 |
| Lender | Wells Fargo Bank, N.A. |



**Comparable Sale 1**

5267 SW 111th Ave , Miami, FL

Date of Sale:
Sale Price:     $290,000.00
Sq. Ft.:        1261
$ / Sq. Ft.:    230



**Comparable Sale 2**

2907 SW 126th Ave , Miami, FL

Date of Sale:
Sale Price:     $300,500.00
Sq. Ft.:        1160
$ / Sq. Ft.:    259



**Comparable Sale 3**

12876 SW 53rd St , Miami, FL

Date of Sale:
Sale Price:     $310,000.00
Sq. Ft.:        1352
$ / Sq. Ft.:    229

LISTING COMPARABLE PHOTOGRAPH ADDENDUM

File #

| | |
|---|---|
| Borrower/Client | YAZMIN CASTELLANOS |
| Property Address | 3225 124TH CT |
| City | MIAMI |
| County | MIAMI-DADE     State   FL      Zip Code   33175 |
| Lender | Wells Fargo Bank, N.A. |



**Listing 1**

Comp List #1



**Listing 2**

Comp List #2



**Listing 3**

Comp List #3

| Borrower/Client | YAZMIN CASTELLANOS | | | | |
|---|---|---|---|---|---|
| Property Address | 3225 124TH CT | | | | |
| City | MIAMI | County | MIAMI-DADE | State FL | Zip Code 33175 |
| Lender | Wells Fargo Bank, N.A. | | | | |



AI Ready PDF Generated on 10/10/2016 12:46:34 PM

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:
HUGO E CASTELLANOS AKA HUGO
CASTELLANOS AKA HUGO EWIN
CASTELLANOS AKA HUGO EWIN
CASTELLANOS, JR. AKA HUGO
CASTELLANOS, JR. AKA HUGO E
CASTELLANOS, JR.

                                   CASE NO. 15-21207-LMI
                                   CHAPTER 13

        Debtor(s).

_____/

**\*\*\*PROPOSED\*\*\*<u>ORDER GRANTING RELIEF FROM THE CO-DEBTOR STAY DE#</u>**

    This matter came on for hearing on \*\*\* on the Motion for Relief from Co-Debtor Stay, DE#\*\*\* filed by Movant, WELLS FARGO BANK, N.A.. The Court, having reviewed the file, heard argument of counsel, and being otherwise fully advised in the premises, does hereby ORDER:

    1.  WELLS FARGO BANK, N.A.'s Motion for Relief from the Co-Debtor Stay is granted, and

    2.  The Order Granting Relief from the Co-Debtor Stay is hereby entered for the purpose of allowing Movant to pursue *in rem* relief against the property described as:

**LOT 6, IN BLOCK 57, OF NINTH ADDITION TO SOUTHERN ESTATES, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 80, AT PAGE 81, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY FLORIDA.**
    **a/k/a 3225 S.W. 124TH CT., MIAMI, FL 33175-2638**

and permitting Movant to offer and provide debtor with information regarding a potential Forbearance

Agreement, Loan Modification, Refinance Agreement, or other loan Workout/Loss Mitigation Agreement, provided such agreement complies with the Bankruptcy Code and other applicable law and to enter into such agreement with Debtor(s), and allowing Movant any other remedies the Movant may have under applicable non-bankruptcy law provided, that the Movant shall not seek or obtain an *in personam* judgment against the Debtor(s).

3. The fourteen (14) day stay of the Order Granting Relief From Stay pursuant to Bankruptcy Rule 4001 (a)(3) is waived so that Movant can pursue its in rem relief without delay

### 

Attorney Kenneth W. Lockwood is directed to serve a copy of this order on interested parties and file proof of service within 3 days of entry of order.

Copies furnished to:

EXL LEGAL, PLLC
12425 28TH STREET NORTH, SUITE 200
ST. PETERSBURG, FL 33716
EFILING@EXLLEGAL.COM

HUGO E. CASTELLANOS, JR,
1024 SW 124TH AVENUE
MIAMI, FL 33184

YAZMIN CASTELLANOS
3225 S.W. 124TH CT.
MIAMI, FL 33175-2638

HUGO CASTELLNOS, SR.
1024 SW 124TH AVENUE
MIAMI, FL 33184

ROBERT SANCHEZ, ESQ
355 W 49 ST.
HIALEAH, FL 33012

NANCY NEIDICH, TRUSTEE
P.O. BOX 279806
MIRAMAR, FL 33027

OFFICE OF THE US TRUSTEE
51 S.W. 1ST AVE
SUITE 1204
MIAMI, FL 33130